**E-FILED on**     03/31/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NOT FOR PUBLICATION

| | |
|---|---|
| REHAN SHEIKH,<br><br>      Plaintiff,<br><br>     v.<br><br>CISCO SYSTEMS, INC., and DOES 1-20<br><br>      Defendants. | No. C-07-00262 RMW<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION TO COMPEL ARBITRATION<br><br>**[Re Docket No. 45]** |

     Defendant Cisco Systems, Inc. ("Cisco") moves to compel arbitration of plaintiff Rehan Sheikh's ("Sheikh") claims. By its motion, Cisco seeks to stay the present action pending the conclusion of the arbitration. Plaintiff has filed no written opposition. For the reasons set forth below, the court grants the defendant's motion to compel arbitration. Judicial action in this case shall be stayed pending resolution of the arbitration.

## I. BACKGROUND

**A. Agreement to Arbitrate**

     Sheikh worked for Cisco from September 25, 2000 to November 4, 2005. Decl. of Shannon Thorne ("Thorne Decl.") ¶ 2. On April 2, 2000, Sheikh signed the first of two offer letters in which

he acknowledged his employment with the defendant was contingent upon his signing and returning the offer letter with an Agreement to Arbitrate Employment Disputes ("AAED") document. Thorne Decl. ¶ 2, Exs. A & C. On the same day, Sheikh also signed the document titled Agreement to Arbitrate Employment Disputes ("April 2000 Agreement"). Thorne Decl. ¶ 3, Ex. B.

The April 2, 2000 offer letter signed by the plaintiff states:

> This offer is contingent upon . . . your completing, signing and returning to us, both the enclosed offer of this letter and the . . . Agreement to Arbitrate Employment Disputes. You need to return the signed documents in the enclosed envelope prior to your date of hire. Your employment and start date are contingent upon our receipt of these documents.

Thorne Decl., Ex. A at 2, ¶ 3. On the offer letter, Sheikh wrote an anticipated state date of June 2000. *Id.* at 3. The letter requests Sheikh return the signed letter by April 4, 2000. *Id.* at 2, ¶ 7.

The Agreement to Arbitrate Employment Disputes document signed by Shiekh on the same day begins by stating:

> I agree that any existing or future dispute or controversy arising out of my employment with Cisco Systems, Inc. (the "Company") or the termination thereof shall be resolved by final and binding arbitration in accordance with the rules and regulations of the American Arbitration Association.

Thorne Decl., Ex. B at 1, ¶ 1. The agreement provides that the laws of the State of California should govern, that the parties are responsible for their own attorneys' fees, and that the arbitrator does not have the authority to award attorneys' fees unless a statute authorizes an award to the prevailing party. *Id.* at 2, ¶ 7.

The agreement to arbitrate covers "all disputes and claims arising from and relating to my employment with the Company . . . ." *Id.* at 1, ¶ 2. The following claims, however, are excluded from arbitration:

> (1) claims for benefits under workers' compensation, unemployment insurance and state disability insurance laws;
> (2) claims concerning the validity, infringement or enforceability of any trade secret, patent right, copyright, trademark, or any other intellectual property held or sought by the Company or which the Company could otherwise seek; and
> (3) any other claim in which there has been a final decision by the California Supreme Court or Ninth Circuit Court of Appeals holding that the claim in question cannot be subject to final and binding arbitration.

*Id.* at 1-2.

Cisco further maintains a written arbitration policy, along with other employee policies and guidelines, on the company's intranet. Thorne Decl. ¶ 5. From the intranet, employees can access the document, last modified May 23, 2005, titled Agreement to Arbitrate Employment Disputes ("May 2005 Agreement"). *Id*., Ex. D. The May 2005 agreement differs only slightly from the April 2000 Agreement, and in no material legal respect.

**B. Procedural History**

The original complaint in this dispute was filed in March 2006 in state court, Superior Court of California, County of Santa Clara. Order Denying Pl.'s Second Mot. to Remand at 2. In January 2007, Cisco successfully removed the action to federal court on the basis the plaintiff's claims are preempted by the Employee Retirement Income Security Act ("ERISA"). *Id*. at 3. The court found that some of Sheikh's claims revolved around allegations of Cisco's handling of benefits of claims. *Id*. Sheikh unsuccessfully sought reconsideration. *Id*. After filing a Second Amended Complaint modifying his claims, the plaintiff was again unsuccessful in remanding the action to state court. *Id*.

The present motion to compel arbitration was filed April 7, 2008. Sheikh refused Cisco's request to submit his claims to arbitration. Mot. at 1:28-2:l. Cisco now moves to compel arbitration and to stay the present action until the conclusion of arbitration. After hearing oral arguments on Oct. 10, 2008, the court requested parties submit additional briefing on whether the arbitrations agreement is unconscionable.

**II. ANALYSIS**

The Federal Arbitration Act ("FAA") provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. However, courts may decline to enforce such agreements for "grounds as exist at law or in equity for the revocation of any contract." *Id*.; *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir.2002). In determining the validity of an agreement to arbitrate, federal courts apply ordinary state-law principles that govern contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Thus, generally applicable defenses, such as fraud, duress, or unconscionability, may be applied to invalidate

arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

### A.     The April 2000 Agreement Controls

The court first considers which agreement controls, the April 2000 Agreement or the May 2005 Agreement. While Sheikh admits to signing the April 2000 Agreement, Cisco does not submit similar evidence that Sheikh consented to the May 2005 Agreement. Instead, Cisco only alleges that Sheikh had access to the May 2005 Agreement via the company's intranet. Additional evidence of Sheikh's consent is required to supercede the April 2000 Agreement.[1] Thus, the court determines that Sheikh only consented to the initial arbitration agreement and applies its analysis to the April 2000 Agreement. That agreement also provides that the law of California governs its interpretation, and the court agrees.

### B.     Applicable Scope of the Agreement

Sheikh's claims under the California Fair Employment and Housing Act ("FEHA")(claims 1-4) fall within the arbitration agreements inclusion of claims for "discrimination under any and all state and federal statutes that prohibit discrimination in employment." His claims for wrongful termination, intentional infliction of emotional distress, and negligent misrepresentation (claims 5, 6, and 9) are also explicitly included in the agreement. Thorne Decl., Ex. B at 1.

Claim 7 alleges the defendant breached contractual agreements in part by "failing to ensure cooperation with the insurance companies to have benefits paid[.]" Second Amended Complaint ¶ 50. Claim 8 alleges the defendant acted in bad faith and interfered with the payment of benefits to the plaintiff from worker's compensation, medical reimbursements, short term disability, and long term disability insurance plans. *Id.* ¶ 56. Claims 7 and 8, although dealing with benefits and insurance, are at bottom contractual disputes. Claim 7 is for breach of contract and claim 8 for breach of an implied contractual covenant. Neither claim falls within the agreement's stated

---

[1] Additionally, the April 2000 Agreement states under the section "Complete Agreement" that it "may be modified only in writing, expressly referencing this Agreement and [the employee] by full name, and signed by the President of the Company." Thorne Decl., Ex. B at 3,72. Cisco presents no evidence to suggest the April 2000 Agreement was modified in accordance with this requirement.

**United States District Court**
For the Northern District of California

1  exceptions. Accordingly, the court finds that the arbitration agreement includes all of Sheikh's
2  claims.

3      **C.**    **Minimum Requirements for Arbitration of Unwaivable Statutory Claims**

4       In *Armendariz v. Foundation Health Psychcare Servs., Inc.*, the California Supreme Court
5  held that arbitration agreements that cover unwaivable statutory rights enacted for public purpose
6  are subject to particular scrutiny. 24 Cal.4th 83, 100 (2000)(citing Cal. Civ. Code §§ 1668, 3513).
7  Since California courts have held that the California FEHA establishes public rights, Sheikh's FEHA
8  claims must pass this initial analysis. *See Id.*

9       There are five minimum requirements for lawful arbitration of statutory rights in claims
10  arising out of an employment context. *Id.* at 102; *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.
11  4th 638, 653-54 (2004). At a minimum, an arbitration agreement must: (1) provide for neutral
12  arbitrators, (2) provide for more than minimal discovery, (3) require a written award, (4) provide for
13  all types of relief that would otherwise be available in court, and (5) not require the employee to pay
14  either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the
15  arbitration forum. *Armendariz*, 24 Cal.4th at 102-03. The Cisco agreement defers to the rules and
16  regulations of the American Arbitration Association ("AAA"). Thorne Decl., Exs. B, E. The court
17  finds that the AAA procedures conform to the five minimum requirements. As such, Cisco's AAED
18  meets the minimum requirements established for the type of claims waived here.

19      **D.**    **Unconscionability**

20       Although Sheikh's FEHA claims pass the initial threshold established for unwaivable public
21  rights, the arbitration agreement as a whole must not be unconscionable. Sheikh, as the party
22  opposing arbitration, has the burden of proving the agreement is unconscionable. *Szetela v.*
23  *Discover Bank*, 97 Cal.App.4th 1094, 1099 (2002). Citing Cal. Evid. Code § 500; Cisco contends
24  that Sheikh, by failing to submit an opposing brief on the issue of unconscionability, did not meet
25  this burden. The court acknowledges that Sheikh waives any dispute as to matters of fact. With
26  respect to matters of law, however, the court may still find the contract unconscionable, and refuse
27  to enforce it or limit the contract's application. Cal. Civ. Code § 1670.5.
28

The California Supreme Court in *Armendariz* provides the definitive pronouncement of California law on unconscionability to be applied to mandatory arbitration agreements. *Ferguson*, 298 F.3d 778,782-83 (9th Cir. 2002). "In order to render a contract unenforceable under the doctrine of unconscionability, there must be both a procedural and substantive element of unconscionability." *Id.* at 783 (citing *Armendariz*, 24 Cal.4th at 114). These two elements must both be present, but not necessarily in the same degree. *Id.* "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal.4th at 114.

### 1. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at the time." *Id.* at 783 (citing *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322 (1999)). The analysis focuses on two factors: oppression and surprise. *Id.* "'Oppression' arises from the inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. 'Surprise' involves the extent which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (citing *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519 (1997)).

Cisco concedes that the AAED is a contract of adhesion and thus is procedurally unconscionable. Cisco contends, however, that the AAED's procedural unconscionability is minimal and cites *Woodside Homes of Ca., Inc. v. Superior Court* as an analogous case. 107 Cal.App.4th 723 (2003). *Woodside* dealt with a real-estate contract requiring judicial reference. *Id.* at 727. Because the signing party was required to initial each paragraph separately and both parties were fairly sophisticated, the court found that the contract, though one of adhesion, was only minimally procedurally unconscionable. *Id.* at 729-30. is no suggestion here that Sheikh's signing of the AAED had any of the features the *Woodside* court relied upon in mitigating that contract's procedural unconscionability.

Other cases analyze procedural unconscionability in employment arbitration disputes. Where a contract of adhesion is oppressive, the element of surprise need not be shown. *Abramson*, 115 Cal. App. 4th 638, 656 (2004). Consistently, California courts have held an agreement is

procedurally unconscionable where "a party in a position of unequal bargaining power is presented with an offending clause without the opportunity for meaningful negotiation." *Ferguson*, 298 F.3d at 784. "Moreover, in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz*, 24 Cal.4th at 115.

*Gelow v. Cent. Pac. Morg. Corp.*, 560 F.Supp.2d 972 (E.D.Cal. 2008), also provides guidance with respect to the level of procedural unconscionability present here. In *Gelow*, the employer sought to enforce arbitration agreements allegedly signed by employees as part of their employment. *Id.* at 976-77. There, the court held that the level of procedural unconscionability is significant for an employee arbitration contract. *Id.* at 982. The court agrees. Given the acute economic pressure exerted by employers requiring preemployment contracts, Cisco's AAED exhibits more than a minimum level of procedural unconscionability.

### 2. Substantive Unconscionability

"Substantive unconscionability focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." Ferguson, 298 F.3d at 784 (citing Kinney, 83 Cal.Rptr. 2d at 353). The primary consideration is whether the agreement contains a "modicum of bilaterality." *Armendariz*, 24 Cal.4th at 117. A lack of mutuality exists in a contract of adhesion if it requires one party, but not the other, to arbitrate all claims arising out of the same transactions or occurrences. *Id.* at 120. If an arbitration system is fair, then both parties should be willing to submit claims to arbitration. *Id.* at 118.

The court focuses its analysis on Cisco's intellectual property carve-out provision. The AAED states that "claims concerning the validity, infringement or enforceability of any trade secret, patent right, copyright, trademark, or any other intellectual property held or sought by the Company or which the Company could otherwise seek" are exceptions to binding arbitration and will be "resolved as required by law then in effect." Thorne Decl., Ex. B.

Cisco contends the AAED is bilateral because it does not condition arbitration on whether the employee or Cisco is the party interested in filing suit. Defs Reply Mem. Concerning Unconscionability at 6:22-26. Instead, the carve-out permits either party to file suit in court for any claim relating to intellectual property held or sought by Cisco. Although at first glance the carve-out seems one-sided, the provision grants both parties the right to judicial relief when either party disputes rights to intellectual property. This alone, however, is not the test for mutuality.

The court must also consider whether the AAED compels arbitration of claims more likely to be brought by the weaker party but exempts from arbitration claims more likely to be brought by the stronger party. An agreement that allows for this discrepancy may be unfairly one-sided. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004) (citing *Armendariz*, 24 Cal.4th at 119). In *Fitz*, a former employee sued NCR for age discrimination. *Id.* at 707. In considering NCR's motion to compel arbitration, the court found the company's employee-dispute resolution policy requiring arbitration substantively unconscionable. *Id.* at 726. The court reasoned that in a wrongful termination dispute, an employee claiming age discrimination is required to arbitrate her dispute while the employer arguing the employee was fired for divulging trade secrets is permitted to seek judicial review. *Id.* at 725. The agreement lacked basic fairness because it required one party but not the other to arbitrate claims arising out of the same transaction or occurrence. *Id.* at 665-66.

As in *Fitz* and *Abramson*, Cisco's AAED is unfairly one-sided and lacks mutuality. The AAED requires arbitration primarily for claims likely to be brought by the employee, the weaker party. In contrast, the carve-out provision overwhelmingly benefits Cisco since an employer is far more likely to initiate intellectual property suits. Here, Cisco is the stronger party, the one responsible for creating the carve-out clause, and the one far more likely to initiate and benefit from litigating an intellectual property dispute. As a result of its design, the AAED allows Cisco to preserve judicial review for claims it is more likely to bring.

The court recognizes that not all contracts of adhesion that lack mutuality are invalid. The *Armendariz* court concluded that contracts that lacked mutuality are enforceable but only when the party with superior bargaining power factually establishes a "business reality" to justify the lack of mutuality. 24 Cal.4th at 117. "Without reasonable justification for this lack of mutuality, arbitration

1 appears less a forum for neutral dispute resolution and more as a means of maximizing employer
2 advantage." *Id.* at 118.  Here Cisco presents no evidence to justify a business reality.  Accordingly,
3 the AAED is both procedurally and substantively unconscionable.

### F. Severance

Since Cisco's AAED is both procedurally and substantively unconscionable, the court now considers whether the offending provision can be severed and the remainder of the agreement enforced, or whether the AAED should instead be found void in its entirety.  If the contract is permeated by unconscionability, then it cannot be enforced.  *Armendariz*, 24 Cal.4th at 124.  Alternatively, if the offending terms are collateral to the contract's main purpose, then the illegal provision can be restricted or severed.  *Id.*

In *Armendariz*, the California Supreme Court chose not to sever the offending terms based on two factors.  *Id.*  First, the arbitration agreement contained more than one unlawful provision.  The court reasoned that multiple defects indicate a systematic effort to impose arbitration on the employee as an inferior forum to litigation.  *Id.*  Second, the court found the agreement permeated with unconscionability since there was no single provision the court could strike out or restrict to reform the contract.  *Id.*  Reforming the contract would instead require augmenting the contract with additional terms, a solution the court does not have the authority to do.  *Id.*

Here, the intellectual property carve-out is the sole unequal clause.  The lack of additional offending terms indicates that the AEED is not "permeated with illegality and unconscionability."  The AAED's purpose appears to be to submit employment disputes to arbitration, and the single intellectual-property carve out, though it renders the agreement unconscionable under *Fitz*, can be eliminated without undermining that purpose, or introducing other inequalities into the agreement.[2]  Therefore, the court finds that the intellectual property carve-out provision is appropriately severed from the contract.

---

[2] Because the instant action does not involve an intellectual property dispute, the court does not today pre-judge what this arbitration agreement would require in such a case.

ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; No. C-07-00262 RMW
LL                                                                   9

**III. ORDER**

For the foregoing reasons, the court grants the defendant's motion to compel arbitration and stays judicial action pending resolution of the arbitration.

DATED: 03/31/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Rehan Ayyub Sheikh          rehansheikh@yahoo.com

**Counsel for Defendants:**

Marlene S. Muraco          mmuraco@littler.com
Erica H. Kelley            ehermatz@littler.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     03/31/09                         _____JAS_____
                                          **Chambers of Judge Whyte**